FILED

2015 Jan-27  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **SAMMIE L. HULLETT,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | |
| ] | **Case No.: 2:12-cv-02831-KOB** |
| **UNITED STATES OF AMERICA,** ] | |
| ] | |
| **Defendant.** ] | |
| ] | |

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

The court held a bench trial on this matter on January 20, 2015 and heard evidence from both sides. Based on the evidence and stipulated facts the court made the following findings of fact and conclusions of law:

**I.      Findings of Fact**

**A.      Stipulated facts by the Parties Adopted by the Court**

1.      On December 1, 2008, the VA in Decatur, Georgia, received plaintiff's administrative claim in the amount of $3,500,000, which contended that the tip of a dialysis catheter had broken off and been left his chest in approximately 2006.

2.      Plaintiff later clarified that incident occurred on February 15, 2007, at the VA hospital in Birmingham, AL but that he had discovered this incident on or about May 14, 2008.

3.      Plaintiff's administrative claim was finally denied by the VA by a letter dated February 29, 2012.

4.      Plaintiff filed his judicial complaint in the U.S. District Court on August 28, 2012.
Plaintiff's judicial complaint claims that a "retained fragment" from a catheter
procedure during dialysis was improperly left inside him.

5.      Plaintiff produced no medical expert testimony to support his claims of breach of
the standard of care, causation or proximate cause of damages.

6.      Plaintiff relies on a retained foreign object theory to support his claims under the
laws of Alabama.

7.      (Deleted by the court)

8.      (Deleted by the court)

9.      Plaintiff, an African-American male, was born on May 4, 1951, and he served in
the United States Navy from November 14, 1972 to July 14, 1976, when he was
honorably discharged.

10.     Plaintiff has a history of the following illnesses: end stage renal disease, rectal
polyp, embolism and thrombosis of vena cava, stress incontinence, erectile
dysfunction, prostate cancer, impotence of psychogenic origin, hepatitis C,
diabetes mellitus type II with unspecified renal manifestations, nephritis and
nephropathy, anemia, retinal edema, and diabetic retinopathy.

**B.**     **Medical Event Timeline with the dates Plaintiff Received Medical Care at the
Birmingham Veterans Administration Medical Center (BVAMC) Supported by
Medical Records and Testimonies - Stipulated by Parties and Adopted by the Court**

1.      In December 11, 2003, plaintiff was diagnosed with End Stage Renal Disease
(ESRD) and underwent first placement of many catheter based vascular access
(permacath) procedures. (Defendant's Exhibit 3-Medical Records-VA radiology

2

report-Bates numbers: Hullett_011494 and Hullett_011495) (Deposition of Dr. Carlton Young, of September 19, 2014, at p. 20)

2.    In late 2006, plaintiff had symptoms of superior vena cava syndrome (SVCS). (Deposition of Dr. Carlton Young, of September 19, 2014, at p. 79)

3.    On January 18, 2007, the VA was notified that the plaintiff was undergoing a graft placement for hemodialysis access at Medical Center East in Birmingham, Alabama. (Deposition of Dr. Carlton Young, of September 19, 2014, at p. 42, Government Exhibit 5, p. 2)

4.    February 15, 2007 plaintiff claimed that a "retained fragment" from a catheter procedure during dialysis was improperly left inside him. (Pretrial Order stipulation and plaintiff contentions)

5.    On February 15, 2007, a request was made to evaluate plaintiff for SVC obstruction, and a CT of the thorax was performed which yielded the following impression: "Stenosis of the lower jugular vein and also of the lower SVC down to the diameter of  a right jugular dialysis catheter with resultant multiple collaterals in the neck and chest wall." (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates numbers: Hullett_011340 and Hullett_011342) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at pp. 33-35; Deposition of Dr. Carlton Young, of September 19, 2014, at pp. 23-25)

6.    On February 16, 2007, an angioplasty of the SVC was performed and a guide wire was passed through the SVC into the left innominate vein and into the right internal jugular vein. (Defendant's Exhibit 3-Medical Records-VA radiology

report-Bates numbers: Hullett_011312 through Hullett_011339) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at pp. 35-37; Deposition of Dr. Carlton Young, of September 19, 2014, at pp. 25-28)

7.   On March 26, 2007, plaintiff had chest x-rays, and no fragment was seen. All catheter wires have radiopaque qualities that make any part of the wires show up on x-rays and the like. (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number: Hullett_011308) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at pp. 16, 17, 23, and 37; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 28)

8.   On December 18, 2007, plaintiff had a chest x-ray, and no ragment was seen. (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number: Hullett_011306) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p. 38; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 28)

9.   On December 20, 2007, plaintiff had a chest x-ray, and no fragment was seen. (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number: Hullett_011294) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p. 38; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 28)

10.   On December 25, 2007, plaintiff had chest x-rays, and no fragment was seen. (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number: Hullett_011290) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at pp. 38-39; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 28)

11.   On January 1, 2008, plaintiff had a chest x-ray, and no fragment was seen.

4

(Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number: Hullett_011272) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p. 39; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 28)

12.    On May 14, 2008, Dr. Kamel Abdel Aal performed a special search for any catheter fragment with a fluoroscope, and no foreign body was seen, so he terminated any further attempt at retrieval. (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number: Hullett_011262) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at pp. 39-40; Deposition of Dr. Carlton Young, of September 19, 2014, at pp. 29-30)

13.    On June 16, 2008, a chest CT without contrast was performed as a follow-up which was interpreted as consistent with a catheter fragment in the right innominate vein; the chest CT was compared to May 14, 2008 chest CT; and in the innominate vein there appeared to be a catheter fragment (a thin catheter like a PICC) that was unchanged in position. (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates numbers: Hullett_011258 through Hullett_011260) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p. 40; Deposition of Dr. Carlton Young, of September 19, 2014, at pp. 29-30)

14.    On September 4, 2008, plaintiff had a chest x-ray, and no fragment was seen. (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number: Hullett_011248) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p. 41; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 30)

15.    On April 27, 2009, at the Atlanta VAMC, plaintiff had chest x-rays

(posterior/anterior/ and lateral) where no radiopaque foreign body was identified. (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number: Hullett_011524 (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p. 41; Deposition of Dr. Carlton Young, of September 19, 2014, at pp. 30-31)

16.     On July 27, 2009, at the Tennessee Valley HCS, plaintiff had chest x-rays but no fragment was seen. (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number: Hullett_011525 (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p. 41; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 31)

17.     On October 25, 2009, plaintiff had a chest x-ray, and no fragment was seen. (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number: Hullett_011246) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p. 41; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 31)

18.     On January 14, 2011, plaintiff had a chest x-ray, and no fragment was seen. (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number: Hullett_011220) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p. 42; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 31)

19.     On July 20, 2012, plaintiff had chest x-rays, and no fragment was seen. (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates numbers: Hullett_011174 and Hullett_011175) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p. 42;  Deposition of Dr. Carlton Young, of September 19, 2014, at pp. 31-32)

20.     On March 14, 2013, a chest CT without contrast was performed to search for a

retained PICC line; the CT was interpreted as a linear density in the innominate

vein/SVC which was unchanged and consistent with a catheter fragment.

(Defendant's Exhibit 3-Medical Records-VA radiology report-Bates numbers:

Hullett_011152 through Hullett_011154) (Deposition of Dr. J. Kevin Smith, of

September 11, 2014, at pp. 42-43; Deposition of Dr. Carlton Young, of September

19, 2014, at p. 32)

21.     On June 25, 2013, plaintiff had a chest x-ray, and no fragment was seen.

(Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number:

Hullett_011142) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p.

43; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 32)

22.     On July 5, 2013, plaintiff had a chest x-ray, and no fragment was seen.

(Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number:

Hullett_011140) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p.

43; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 32)

23.     On July 10, 2013, plaintiff had a chest x-ray, and no fragment was seen.

(Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number:

Hullett_011138) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p.

43)

24.     On July 11, 2013, plaintiff had chest x-rays, and no fragment was seen.

(Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number:

Hullett_011102) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at pp.

43-44; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 33)

25.     On July 14, 2013, plaintiff had a chest x-ray, and no fragment was seen.

(Defendant's Exhibit 3-Medical Records-VA radiology report-Bates numbers:

Hullett_011100 ) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p.

44; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 33)

26.     On October 15, 2013, plaintiff indicated to the VA nurse transplant coordinator

that he had quit smoking as of today because he needed  a kidney and that he had

enrolled in Smoking Cessation classes; he said that he had never wanted to quit

before. (Defendant's Exhibit 3-Medical Records-Bates number: Hullett_009836)

(Deposition of Dr. J. Kevin Smith, of September 11, 2014, at pp. 48-49;

Deposition of Dr. Carlton Young, of September 19, 2014, at pp. 39-41)

27.     On April 16, 2014, plaintiff presented the VA for a nicotine metabolite test and

requesting a chest CT scan with a history of a retained PICC line in his chest;

removal had been attempted in the past. It was noted that the foreign body could

not be located under fluoroscopy and the procedure was terminated. Plaintiff

brought in CT scan report from an outside facility. (Defendant's Exhibit 3-

Medical Records-Bates numbers: Hullett_009773 through Hullett_009774)

(Deposition of Dr. J. Kevin Smith, of September 11, 2014, at pp. 44-45;

Deposition of Dr. Carlton Young, of September 19, 2014, at pp. 33-35)

28.     On May 8, 2014, a chest CT without contrast was performed to evaluate

mediastinal and cervical lymphadenopathy which resulted in an impression of a

stable retained catheter fragment in the innominate vein. (Defendant's Exhibit 3-

Medical Records-VA radiology report-Bates numbers: Hullett_09557 through and Hullett_09558) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at p. 45; Deposition of Dr. Carlton Young, of September 19, 2014, at p. 35)

29.   On June 27, 2014, an upper extremity venous ultrasound was performed on plaintiff that resulted in an impression of a partially calcified fibrin sheath versus catheter fragment being visualized in the right internal jugular vein that was stable. (Defendant's Exhibit 3-Medical Records-VA radiology report-Bates number: Hullett_011090) (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at pp. 45-46; Deposition of Dr. Carlton Young, of September 19, 2014, at pp. 35-36)

30.   The medical opinions of Dr. J. Kevin Smith and Dr. Carlton Young are essentially the same: there is no retained foreign object in plaintiff's left innominate vein. More likely than not what is and has been visualized there is a calcification that has arisen as a result of a blood clot in that area which has gotten bigger over time. (Deposition of Dr. J. Kevin Smith, of September 11, 2014, at pp. 46-47); and (Deposition of Dr. Carlton Young, of September 19, 2014, at p. 23)

Plaintiff and Defendant agree that the medical records and testimonies to date support the facts in the foregoing timeline.

**C.   Additional Facts Found by the Court as Stated on the Record at the Close of Evidence.**

1.   The CT scan of February 15, 2007 did not make any mention of any possible retained catheter fragment. The CT scan report of May 14, 2008 first raised the

question of a possible retained catheter fragment.

2.      The report of Dr. Dibona of May 15, 2008 noted that clinical correlation was needed and that Dr. Dibona had discussed the possible presence of the retained catheter fragment with Dr. Cooper.

3.      On May 14, 2008, in response to the May 14, 2008 CT scan report, a fluoroscopy was done to locate any retained catheter fragment. However, none was seen and the procedure was then terminated.

4.      On June 15, 2008 a follow up CT scan noted a linear density that "appears to be a catheter fragment (a thin catheter like a PICC) is unchanged."

5.      Every CT scan since May 14, 2008 until the most recent one in 2014 made some reference to linear density that was "consistent with catheter fragment" or some similar language including CT scans on March 14, 2013 and May 8, 2014, which reflect impressions of a retained catheter fragment in the innominate vein. However, an ultrasound on June 27, 2014, for the first time, in the impression section, reads: "partially calcified fibrin sheath versus catheter fragment is visualized."

6.      On December 1, 2008, the VA received the plaintiff's claim. The claim referenced a tip of catheter left in chest. The VA subsequently denied the claim in 2012 and the plaintiff filed his complaint.

**II.     Conclusions of Law**

**A.     The court adopts the parties' Agreed Applicable Propositions of Law from the Pre-trial Order as set out below.**

*Jurisdiction and the Federal Tort Claims Act*

1.     The plaintiff brings this action alleging negligence against the defendant United States under the FTCA. The FTCA specifically provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims*, in the same manner and to the same extent as a private individual under like circumstances*, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674 (emphasis by parties).

2.     28 U.S.C. § 1346(b) further provides that a federal district court has exclusive jurisdiction over tort claims against the United States "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, *if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred*." (emphasis by parties).

3.     The substantive laws of the state of Alabama apply to plaintiff's case because the alleged acts or omissions occurred in Alabama. This means that claims, defenses, and damages are governed by the substantive laws of Alabama. *See generally, Means v. United States*, 176 F. 3d 1376 (11th Cir. 1999); *Campbell v. United States*, 962 F. 2d 1579 (11th Cir. 1992); *Waffen v. United States*, 799 F. 2d 911 (4th Cir. 1986).

*The Alabama Medical Liability Act*

4.     Thus, in this case, the laws of Alabama apply to liability and damages, including

Alabama's Medical Liability Act of 1987 (Ala. Code §§ 6-5-540 through 6-5-552)

("AMLA"). *See Suarez v. United States*, 22 F. 3d 1064, 1065 (11th Cir. 1994).

5.     Plaintiff's claims in this case arising out of his medical treatment are thus

governed by the AMLA through the FTCA. The AMLA applies "[i]n any action

for injury or damages or wrongful death, whether in contract or in tort, against a

health care provider for breach of the standard of care." § 6-5-548(a), Ala. Code

1975.

6.     The definition of "health-care provider" includes a "medical practitioner," that is,

a medical doctor or osteopath licensed to practice in Alabama. §§ 6-5-542(1) and

6-5-481(1), Ala. Code 1975. *Mock v. Allen*, 783 So. 2d 828 (Ala. 2000). *See also*

*Collins v. Ashurst*, 821 So. 2d 173 (Ala. 2001). The parties do not dispute that the

AMLA applies to the plaintiff's treating physicians at the VA.

7.     The AMLA clearly establishes the plaintiff's burdens, which requires the plaintiff

to prove by substantial evidence that the health-care provider failed to provide the

level of reasonable care, skill, and diligence that other similarly situated health-

care providers in the same general line of practice usually follow in the same or

similar cases. § 6-5-548, Code of Alabama (1975), as amended. APJI 25.01.

8.     Further, the plaintiff must also establish by substantial evidence that this alleged

failure or breach of the standard of care probably caused the injury in question. §

6-5-559, Code of Alabama (1975); APJI 25.00; APJI 25.04; *McAfee v. Baptist Medical Ctr.*, 641 So. 2d 265, 267 (Ala. 1994).

9.    To satisfy the substantial evidence test, the plaintiff must present that character of evidence that would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed. APJI 25.05.

10.   A doctor does not guarantee the success of his treatment. If the VA medical personnel followed the standard of care but got a bad result, the trier of fact cannot hold them responsible for plaintiff's harm. APJI 25.08.

11.   The word "treatment" means all the steps taken to cure an injury, illness or disease and it includes examination and diagnosis. APJI 25.15.

12.   Under the AMLA, plaintiff must demonstrate: (1) the appropriate standard of care; (2) that the VA medical personnel breached the appropriate medical standard of care in treating plaintiff; and (3) that harm to plaintiff was probably caused by the VA medical personnel's failure to follow the standard of care. Ala. Code § 6-5-484; APJI 25.00; 25.04.

### *The Retained Foreign Object Exception and Burden Shifting*

13.   Defendant contends that in this case it would be necessary for the plaintiff to prove a breach of the standard of care through expert testimony.

14.   The plaintiff contends that proof of a retained foreign object in the body following surgery or an invasive medical procedure presents an exception to the general rule requiring medical expert testimony because a retained object presents a case where want of skill or lack of care is so apparent as to be understood by a layman

and requires only common knowledge and experience to understand it. *See*

*Breaux v. Thurston*, 888 So. 2d 1208, 1217 (Ala.2003)

15.     While the presence of the retained object may be prima facie evidence of

negligence by the medical personnel in carrying out their responsibilities, the

presence of the retained objected does not, however, establish negligence per se.

Rather, it serves to shift the burden to the defendant to show that its medical

personnel were not negligent because they fully complied with the statutorily

defined standard of care. *Houserman v. Garrett*, 902 So.2d 670, 673-74

(Ala.2004); APJI 25.16. *See also Ivy v. Carraway*, 32 So. 3d 1247 (Ala. 2009).

***Plaintiff's Burden Once Defendant Has Presented Expert Evidence***

16.     Defendant contends that—based upon the medical expert report of Dr. Young

challenging the plaintiff's assertion that a catheter fragment was left in him—there

were no breaches in the standards of care that caused any harm to plaintiff, and the

burden therefore shifted to plaintiff to present substantial evidence to support his

claims. Plaintiff has not done so.

17.     Specifically, the defendant asserts that plaintiff has not presented expert testimony

to support his claims as required under § 6-5-548, Ala. Code 1975, a part of the

AMLA, § 6-5-540 et seq., Ala. Code 1975. For this reason, defendant contends

that it is entitled to judgment as a matter of law under Rules 50 and 56 of the

Federal Rules of Civil Procedure.

14

18.     The AMLA requires that a medical expert be a "similarly situated" health-care provider to testify as to the standard of care. § 6-5-548, Ala. Code 1975; APJI 25.21.

19.     The parties agree that plaintiff's claims are governed by the substantive law of the State of Alabama, including the Alabama Medical Liability Act, 6-5-551, et seq., except as limited by the FTCA.

**B.     Application**

Applying the law to the facts, the court concludes, for the reasons stated on the record, that the Plaintiff failed to establish his claims against the Defendant. Therefore, the court enters judgment in favor of Defendant United States of America and against Plaintiff Sammie L. Hullett.

**DONE** and **ORDERED** this 27th day of January, 2015.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

15